**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

GERARDO ZELAYA and TANYA CASE,

                Plaintiffs,

      v.                                     1:22-cv-01091 (AMN/DJS)

KILVIO S. VASQUEZ and THE DAVEY TREE
EXPERT CO.,

                Defendants.

---

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **DUFFY & DUFFY, PLLC**<br>1370 RXR Plaza – 13th Floor<br>Uniondale, New York 11566<br>*Attorneys for Plaintiffs* | **FRANK TORRES, ESQ.** |
| **CAPEZZA HILL, LLP**<br>30 South Pearl Street – Suite P-110<br>Albany, New York 12207<br>*Attorneys for Defendant Vasquez* | **BENJAMIN W. HILL, ESQ.** |
| **MCCORMICK-FOLEY LAW OFFICE**<br>P.O. Box 35<br>Glenmont, New York 12077<br>*Attorney for Defendant Vasquez* | **ABBY MCCORMICK-FOLEY, ESQ.** |
| **HARRIS BEACH MURTHA CULLINA PLLC**<br>677 Broadway – Suite 1101<br>Albany, New York 12207 | **BRADLEY WANNER, ESQ.** |
| 333 West Washington Street – Suite 200<br>Syracuse, New York 13202<br>*Attorneys for Defendant*<br>*The Davey Tree Expert Co.* | **BRIAN D. ROY, ESQ.** |
| **TUCKER ELLIS LLP**<br>950 Main Avenue – Suite 1100<br>Cleveland, Ohio 44113<br>*Attorneys for Defendant*<br>*The Davey Tree Expert Co.* | **CLIFFORD S. MENDELSOHN, ESQ.**<br>**GIUSEPPE W. PAPPALARDO, ESQ.** |

**Hon. Anne M. Nardacci, United States District Judge:**

MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

On September 27, 2022, Gerardo Zelaya ("Plaintiff") and his wife Tanya Case (together, "Plaintiffs"), commenced this action in New York State Supreme Court against Kilvio S. Vasquez ("Defendant Vasquez"), The Davey Tree Expert Co. ("Defendant"), and Enterprise FM Trust, alleging state law claims for negligence and loss of services resulting from a motor vehicle accident on July 24, 2022. Dkt. No. 2 ("Complaint"). On October 21, 2022, Defendant and Enterprise FM Trust removed this action to federal court on the stated basis of diversity. Dkt. No. 1.

Presently before the Court[1] is Defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, Dkt. No. 38 ("Motion"), Plaintiffs' opposition, Dkt. No. 40, and Defendant's reply in further support, Dkt. No. 41. For the reasons set forth below, the Motion is granted in part and denied in part.

## II.    BACKGROUND[2]

### A.  The Parties

Plaintiffs have been married at all relevant times. Dkt. No. 2 at ¶ 22. Plaintiff is a resident of Vermont and his wife is a resident of Virginia. Dkt. No. 1 at ¶¶ 8-9.

Defendant provides professional tree services to, *inter alia*, a utility company in Vermont, and is an Ohio corporation with its principal place of business in Ohio. Dkt. No. 1 at ¶ 11; Dkt.

---

[1] This case was reassigned to the undersigned on January 18, 2023. Dkt. No. 24.

[2] Unless otherwise indicated, the following facts have been asserted by the parties in their statements of material facts with accurate record citations, and expressly admitted or not denied with a supporting record citation in response. *See* N.D.N.Y. L.R. 56.1. The Court has also considered the parties' other submissions and attached exhibits. *See generally* Dkt. Nos. 38-41.

2

No. 38-12 at 19:25-20:3.[3]

Defendant Vasquez was previously employed by Defendant to provide professional tree services to the utility company in Vermont.  Dkt. No. 2 at ¶ 9; Dkt. No. 38-7 at 11:24-12:4; Dkt. No. 38-12 at 19:25-20:3.  The Complaint alleges, upon information and belief, that Defendant Vasquez is now a resident of Pennsylvania.  Dkt. No. 2 at ¶ 3.

### B.  Relevant Events

Prior to the July 2022 accident, Defendant Vasquez had been working in Vermont for approximately two years, as assigned by Defendant.  Dkt. No. 38-7 at 11:24-12:21.  During this time, Defendant Vasquez lived in hotels paid for by Defendant and led one of Defendant's tree trimming crews.  *Id.* at 12:22-13:4.  Defendant provided Defendant Vasquez with a leased 2019 Ford F-150 pickup ("F-150") so that he could travel between his hotel and the location where the tree trimming equipment was stored; from that location, the crew would then travel to different job sites using a large bucket truck.  Dkt. No. 38-2 at ¶ 8; Dkt. No. 38-12 at 20:2-21:2.

On the evening of July 23, 2022, Defendant Vasquez drove the F-150 to Plaintiff's house.  Dkt. No. 38-2 at ¶¶ 7-8; Dkt. No. 38-11 at 9, 29:25-30:25.  Defendant Vasquez knew Plaintiff and considered him a friend.  Dkt. No. 38-11 at 9, 28:23-29:12; Dkt. No. 38-7 at 20:2-4, 31:12-17.  It was Saturday night, and the two friends planned to pick up a third friend, Luis, in Saratoga Springs, New York before going out to bars there.  Dkt. No. 38-11 at 10, 31:14-32:20.  While at Plaintiff's house, Defendant Vasquez had a beer and Plaintiff had no alcohol.  Dkt. No. 38-2 at ¶ 7; Dkt. No. 38-11 at 10, 30:9-32:14.  Plaintiff used one of his personal vehicles to drive himself and Defendant Vasquez to Saratoga Springs, a trip that takes 60 minutes with traffic and 45 minutes without.  Dkt.

---

[3] Citations to docket entries utilize the pagination generated by CM/ECF, the Court's electronic filing system, and not the documents' internal pagination.

No. 38-11 at 12, 38:2-5.

After picking up Luis, the group stopped at a gas station and purchased three 12-packs of beer for later consumption.  Dkt. No. 38-2 at ¶ 9; Dkt. No. 38-11 at 11, 36:2-5.  The group then arrived at the bars sometime between 8:30 p.m. and 10:00 p.m. on July 23, 2022, and left between 1:30 a.m. and 2:00 a.m. the next morning.  Dkt. No. 38-11 at 11, 35:15-18.  Plaintiff testified that while he did not drink at the bars because of his "problems in the past,"[4] he observed Defendant Vasquez drink eight to ten beers and Luis drink seven or eight beers and several shots of tequila. *Id.* at 10, 33:19-37:5; Dkt. No. 38-2 at ¶ 11.  When the group finished at the bars, Plaintiff drove everyone back to his house.  Dkt. No. 38-11 at 11, 36:6-16.  Along the way, Plaintiff observed Defendant Vasquez drink two of the 36 beers the group had purchased earlier, and also saw Luis drinking in the backseat.  *Id.* at 11, 37:10-15; Dkt. No. 38-2 at ¶ 12.

After arriving back at Plaintiff's house around 3:00 a.m. on July 24, 2022, the group continued drinking.  Dkt. No. 38-11 at 12, 38:10-16.  Between 3:00 a.m. and approximately 4:30 a.m., Plaintiff testified that he had eight to ten beers; Defendant Vasquez had seven or eight beers; and Luis drank around the same number.  *Id.* at 12, 39:20-40:12; Dkt. No. 38-2 at ¶ 13.  Once the group finished all the beers they had purchased, they decided to go out and get more.  Dkt. No. 38-11 at 12, 41:12-22; Dkt. No. 38-2 at ¶¶ 14-15.  Plaintiff decided to get in the F-150 with Defendant Vasquez to do so.  Dkt. No. 38-11 at 13, 44:22-45:21.  While Plaintiff had observed Defendant Vasquez drink something like 20 beers over several hours, Plaintiff noted that Defendant "wasn't falling or anything" and, moreover, was "a strong man."  *Id.* at 13, 44:3-16.  Plaintiff further satisfied himself with Defendant Vasquez's ability to drive at that time because: "I told him, hey,

---

[4] When asked about drunk driving convictions ("DWI"), Plaintiff stated that he had paid a lawyer for his three reckless driving convictions, most recently in 2021, and shared "I don't know how he did it, but my license was never suspended."  Dkt. No. 38-11 at 25:24-26:18, 93:24-94:9.

listen, I want to make sure you're okay, do a [number] four for me, and he did the four. He wasn't moving around or losing his balance or anything." *Id.* at 13, 45:9-12. When asked by counsel to clarify what a "number four" meant, Plaintiff explained that it was essentially a field sobriety test: "[y]ou balance on one leg, and you cross the other leg like a four. You make a four with your legs." *Id.* at 13, 45:3-6.

The group then set off in the F-150, with Defendant Vasquez driving[5] and Plaintiff providing GPS directions in the front passenger seat, for a gas station in New York, located approximately an hour away from Defendant Vasquez's house in Vermont. *Id.* at 14, 46:21-48:25; *id.* at 15, 50:9-12; Dkt. No. 38-7 at 33:20-34:8; Dkt. No. 38-2 at ¶ 15. Plaintiff thought Defendant Vasquez was "driving well" for around 45 minutes of this trip, before the accident "happened all of a sudden." Dkt. No. 38-11 at 14, 48:19-4920. The New York police accident report indicates that around 5:19 a.m., the F-150 crossed the double yellow lines, drove across the oncoming lane, and went off the road, into a ditch, and ultimately struck a tree. Dkt. No. 38-14; Dkt. No. 38-2 at ¶ 18. After being evaluated by emergency responders, Defendant Vasquez, who had no complaints of pain, was arrested for DWI, while Plaintiff was transported to Albany Medical Center for complaints of back pain. Dkt. No. 38-14 at 2-3; Dkt. No. 38-2 at ¶ 19.

Plaintiff was discharged after receiving certain medical treatment for bladder and urological injuries. Dkt. No. 38-11 at 17, 60:13-61:17. At his deposition in August 2023, Plaintiff testified that he had seen a gastroenterologist but had not received any further medical treatment for the bladder or urological injuries since his hospital discharge. Dkt. No. 38-11 at 19, 66:21-67:5.

---

[5] It is undisputed that Defendant Vasquez had permission to use the F-150 on July 24, 2022. The parties dispute the legal significance of this permission, *see infra* Section IV.B, as well as its factual scope. *Compare* Dkt. No. 38-12 at 31:13-34:4, *with* Dkt. No. 38-7 at 27:12-29:11.

### C. Defendant's Policies

Defendant has various policies regarding the conduct of its employees and the use of its equipment, including an Employment Handbook and an Alcohol/Drug Abuse Policy (together, the "Policies").  Dkt. No. 38-2 at ¶¶ 2, 5.  It is not clear from the current record whether Defendant Vasquez ever reviewed and acknowledged the Policies.[6]  According to Defendant, Defendant Vasquez "would have" reviewed and acknowledged the Employee Handbook when he was hired in January 2013 and "would have" received updates and amendments to the Employee Handbook throughout his employment via email.  Dkt. No. 38-2 at ¶ 2.  Defendant's corporate representative testified that because Defendant's general practice is to place a copy of the Employee Handbook in each of its vehicles, Defendant Vasquez "would have had one in the [F-150]" and "would have also had one in the bucket truck."  Dkt. No. 38-12 at 18:13-18.

Defendant's Employee Handbook states, in relevant part:

> The personal use of any Company-owned or provided property, including Company vehicles, is not permitted, except if such limited personal use is pre-approved by an employee's manager in writing.  The careless, negligent, destructive, or unsafe use or operation of Company property or use in violation of Company rules or applicable law, as well as avoidable traffic and parking violations, may result in disciplinary action, up to and including termination of employment.

> Company vehicles are provided for the sole and exclusive use of the employees to whom they are entrusted, and employees are prohibited from allowing anyone else to operate or access those vehicles or equipment, unless such access has been approved in writing by the appropriate manager.

---

[6] At least the Employee Handbook is available in both English and Spanish.  Dkt. No. 38-12 at 19:5-9.  It is also not entirely clear from the current record which version(s) were provided to Defendant Vasquez, who testified in Spanish at his deposition.  *Id.* at 18:13-16; Dkt. No. 38-2 at ¶ 2; Dkt. No. 38-6; *see generally* Dkt. No. 38-7.

Dkt. No. 38-2 at ¶ 3; Dkt. No. 38-6. Notwithstanding this language, however, Defendant's corporate representative suggested that Defendant routinely permitted personal use of the F-150 without any prior written approval:

A:   Well, these guys travel. They are obviously living in hotels. So when they get done, that's his only form of transportation. We do allow the employees to go to Walmart to pick up food or water for within the hotel room. Some of the guys pack lunch, so they go get that kind of stuff. In some instances they need to get basic life necessities like laundry soap, you know, things like that. Then they come back to the hotel and they are able to use that while they're on the road. But that's what the limited use was for him with this vehicle.

. . . .

Q:   So he was permitted to use the [F-150] to leave the hotel to purchase necessities, as you mentioned, food, water, or what have you?

A:   That's correct.

Q:   That could be outside of work hours?

A:   Yes, that's correct.

. . . .

Q:   You said that permission to use the [F-150] was permitted to go to Walmart; is that right?

A:   It's to go anywhere that he would need to get supplies while he is living on the road. Obviously he's in a hotel, so the niceties that he would have at home, the things he was accustomed to he would supply himself within the hotel. It was to be used to go pick up things that allow him to survive and sustain himself on the road. It is not to be used for going to bars or picking up people or anything along that timeframe. It's literally to do things that let him be on the road comfortably while he's not at his home working for us.

Q:   Would he have been permitted to use the truck to go to a restaurant, for example?

A:   Yeah, he would be.

Q:   Would he need prior written notice or permission to do that?

7

A:     No, he wouldn't.  He would let them know if he was going to do it.  Most of the hotels the guys stay at, that our teammates stay at, they are right next to places.  A lot of guys just walk to them.  But if he would be in an instance where he was parked and it was three blocks down the road, there wouldn't have been an issue with him going down there to get something to eat.  Now, it would be an issue of whether or not -- he obviously would not be able to drink during his meal.  It is not -- the liberties aren't taken the same as a personal vehicle.  So it would be to get food and come back.  That would be the direct utilization that he would be able to use that [F-150] for, to eat.

Q:     I understand.  Am I correct that any permission to use the vehicle for anything beyond what you've described, that request for [Defendant] Vasquez would have gone to or through [his supervisor]?

A:     That's correct.

Dkt. No. 38-12 at 22:4-17, 23:4-11, 40:14-42:12.

Defendant's Alcohol/Drug Abuse Policy states, in relevant part:

[E]mployees shall not possess or consume alcohol on Company property or during their working time.  Nor may an employee report to work or be at work under the influence of alcohol, any drug, or narcotic, regardless of when consumed.

. . . .

Off-the-job drug activity or alcohol abuse which could have an adverse effect on an employee's job performance or which could jeopardize the safety of other employees, the public, Company equipment or the Company's reputation and relations with its customers or the public will not be tolerated.

Dkt. No. 38-2 at ¶¶ 5, 6; Dkt. No. 38-13.

### D.  Plaintiffs' Allegations

The two-count Complaint alleges that Plaintiff has suffered various unspecified "severe" injuries.  Dkt. No. 2 at ¶ 19.  Plaintiff's first count is for negligence against Defendant Vasquez and vicarious liability against Defendant; the second count is for loss of services of behalf of Plaintiff's wife.  *Id.* at ¶¶ 14-15.

When asked how the accident had affected his relationship with his wife, who is a

schoolteacher, Plaintiff testified:

> We have problems now because the man is the guy who has to bring money to the home, right?  The guy has to provide the money, support.  Now with all this, it's not easy.  My wife, yes, is giving me some trouble here and there because of, you know, bills and stuff like that.  She had to cover many things when I couldn't.
>
> . . . .
>
> Things of the house, the food, the cars, you know, bills, WiFi, electricity, mortgage, oil.

Dkt. No. 38-11 at 21, 75:25-76:14.  Plaintiff, however, is not pursuing any claim for lost wages or loss of earning capacity.  Dkt. No. 38-16 at 7, 21:13-23; *see also* Dkt. No. 2.

### E.  Procedural History

In September 2022, Plaintiffs commenced this action in New York State Supreme Court, Rensselaer County, against Defendant Vasquez, Defendant, and Enterprise FM Trust.  Dkt. No. 2. In October 2022, Defendant and Enterprise FM Trust removed this action to federal court,  on the stated basis of diversity jurisdiction.  Dkt. No. 1.  In November 2022, Plaintiffs stipulated to the discontinuance of their claims against Enterprise FM Trust.  Dkt. No. 12.  In January 2024, the remaining parties jointly requested a brief discovery extension, so that Defendant Vasquez could be deposed following the disposition of his criminal prosecution related to the accident.  Dkt. No. 36.  Discovery otherwise appears to have proceeded smoothly and, besides the Motion, the parties have not engaged in significant motion practice.  *See generally* Docket Sheet.  The Motion was fully submitted in May 2024.  Dkt. Nos. 38-41.  In November 2024, the parties each confirmed that the Court has subject matter jurisdiction to adjudicate their dispute.  Dkt. Nos. 44-45, 47.

### III.    STANDARD OF REVIEW

Summary judgment is properly granted only if, upon reviewing the evidence in the light most favorable to the nonmovant, there is no genuine issue of material fact, and the moving party

is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Richardson v. Selsky*, 5 F.3d 616, 621 (2d Cir. 1993).  A court first determines "whether the evidence presents a sufficient disagreement to require submission to a [factfinder] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986).  "When analyzing a summary judgment motion, the court 'cannot try issues of fact; it can only determine whether there are issues to be tried.'" *Galeotti v. Cianbro Corp.*, No. 12-cv-00900, 2013 WL 3207312, at *4 (N.D.N.Y. June 24, 2013) (quoting *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36-37 (2d Cir. 1994)).

Defendant, in seeking summary judgment, "bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish [its] right to judgment as a matter of law." *Rodriguez v. City of New York*, 72 F.3d 1051, 1060-61 (2d Cir. 1995) (citation omitted).  To determine whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *accord Gibbs-Alfano v. Burton*, 281 F.3d 12, 18 (2d Cir. 2002).  A "material" fact is one that would "affect the outcome of the suit under the governing law," and a dispute about a genuine issue of material fact occurs if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 57 (2d Cir. 1997). The Court should "grant summary judgment where the nonmovant's evidence is merely colorable, conclusory, speculative or not significantly probative." *Schwimmer v. Kaladjian*, 988 F. Supp. 631, 638 (S.D.N.Y. 1997) (citing, *inter alia*, *Anderson*, 477 U.S. at 249-50).

## IV.    DISCUSSION

The Motion argues that Defendant has no vicarious liability as a matter of law because, on the morning of July 24, 2022, Defendant Vasquez (i) was not acting within the scope of his employment, and (ii) was not a permissive user of the F-150.  Dkt. No. 38-1.  The Motion primarily relies upon the particular facts of the accident in support of the first argument, *id.* at 12-15, and Defendant's Policies in support of the second argument, *id.* at 6-12.  The essence of Plaintiffs' opposition is that whether Defendant Vasquez's use of the F-150 was part of his employment, or was as a permissive user, is a question of fact for the jury to decide.  Dkt. No. 40.  In reply, Defendant reiterates its arguments and challenges Plaintiffs' analysis of the relevant authority. Dkt. No. 41.  Defendant Vasquez has taken no position on the Motion.

The Court agrees with the parties' assumption that New York substantive law applies in this diversity action and proceeds to address each argument in turn.  *See, e.g., Ezrasons, Inc. v. Travelers Indem. Co.*, 89 F.4th 388, 394 n.5 (2d Cir. 2023) ("We apply New York state law to this case because the parties' briefs both assume New York state law governs and such 'implied consent is . . . sufficient to establish the applicable choice of law.") (quoting *Trikona Advisers Ltd. v. Chugh*, 846 F.3d 22, 31 (2d Cir. 2017)) (alteration in original).

### A.  Vicarious Liability Based on Scope of Employment

"Under the doctrine of *respondeat superior*, an employer will be liable for the negligence of an employee committed while the employee is acting in the scope of his employment."  *Carlson v. Am. Int'l Grp., Inc.*, 30 N.Y.3d 288, 305 n.6 (2017) (quoting *Lundberg v. State*, 25 N.Y.2d 467, 470 (1969)).  And "[u]nder New York law, 'an employee acts within the scope of his employment when (1) the employer is, or could be, exercising some control, directly or indirectly, over the employee's activities, and (2) the employee is doing something in furtherance of the duties he

11

owes to his employer.'" *Agyin v. Razmzan*, 986 F.3d 168, 184 (2d Cir. 2021) (quoting *Fountain v. Karim*, 838 F.3d 129, 135 (2d Cir. 2016)).  As to the second prong:

> The New York Court of Appeals has explained that "among the factors to be weighed are": [1] the time, place and occasion for the act; [2] the history of the relationship between employer and employee as spelled out in actual practice; [3] whether the act is one commonly done by such an employee; [4] the extent of departure from normal methods of performance; and [5] whether the specific act was one that the employer could reasonably have anticipated.

*Fountain*, 838 F.3d at 138 (quoting *Riviello v. Waldron*, 47 N.Y.2d 297, 303 (1979)).  Finally, to be acting within the scope of employment, "[a]n employee must also act at least 'in part to benefit the employer.'" *Agyin*, 986 F.3d at 185 (quoting *Sharkey v. Lasmo (AUL Ltd.)*, 992 F. Supp. 321, 329 (S.D.N.Y. 1998)).

The Court need not resolve the parties' competing arguments as to the first prong because, even assuming that Defendant was "exercising some control" over Defendant Vasquez's operation of the F-150 on July 24, 2022, Defendant Vasquez was not "doing something in furtherance of the duties he owe[d] to his employer" that morning.  *Agyin*, 986 F.3d at 184-85.  The Court finds the primary authority cited by Defendant, *Baker v. Lisconish*, 68 N.Y.S.3d 233 (App. Div. 2017), to be instructive.  Dkt. No. 38-1 at 14-15.  In *Baker*, the Appellate Division of the New York State Supreme Court, Fourth Department, partially affirmed a trial court's determination that a defendant employer was entitled to summary judgment, specifically on the question of whether its employee was acting within the scope of his employment.  68 N.Y.S.3d at 235-236.  The employee had finished work for the day, received permission to leave, and began driving his company vehicle towards his girlfriend's house.  *Id.* at 235.  He "stopped at numerous bars along the way to drink alcohol," also "purchased beer at a convenience store," and "was driving on back roads at the time of the accident in order to avoid law enforcement."  *Id.*  Given these facts, the Appellate Division concluded that the employee "was not acting in the scope of his employment at the time of

accident, and [defendant employer] bears no respondent superior liability in connection therewith." *Id.* at 235-36 (citations omitted).

The Court reaches the same result here. Defendant Vasquez was not acting within the scope of his employment as a professional tree service provider in Vermont when he used Defendant's vehicle to drunkenly drive to get more alcohol in New York at approximately 5:00 a.m. on a Sunday. Dkt. No. 38-2 at ¶¶ 4, 7, 11-15, 18-19; *accord Rich v. Fox News Network, LLC*, 939 F.3d 112, 130 (2d Cir. 2019) (stating that under New York law "[a]n employer will not be held liable under [*respondeat superior*] . . . for actions which were . . . undertaken by the employee for wholly personal motives.") (alterations in original) (quoting *Galvani v. Nassau Cnty. Police Indemnification Rev. Bd.*, 674 N.Y.S.2d 690, 694 (App. Div. 1998)). Further, Plaintiffs do not even attempt to argue, *see* Dkt. No. 40, that Defendant Vasquez's trip was "in part to benefit" his employer, *Agyin*, 986 F.3d at 185 (citation omitted).

For all of these reasons, the Court grants this portion of the Motion.

### B. Vicarious Liability Based on New York Vehicle and Traffic Law § 388(1)

As a general matter, "New York law imposes joint and several liability on an owner of a vehicle for damages arising from the negligent operation of that vehicle." *Merchants Ins. Grp. v. Mitsubishi Motor Credit Ass'n*, 356 F. App'x 548, 550 (2d Cir. 2009). New York Vehicle and Traffic Law § 388 provides, in relevant part:

> Every owner of a vehicle used or operated in this state shall be liable and responsible for death or injuries to person or property resulting from negligence in the use or operation of such vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner.

N.Y. Veh. & Traf. § 388(1) ("Section 388(1)").[7]  As the Second Circuit has observed, "Section 388(1) reflects the policy judgments of the New York legislature that an injured plaintiff should have recourse to a financially responsible defendant and that owners of vehicles will select and supervise drivers with more care if the owners are held responsible for the drivers' negligence." *Country Wide Ins. Co. v. Nat'l R.R. Passenger Corp.*, 407 F.3d 84, 87 (2d Cir. 2005) (citing *Murdza v. Zimmerman*, 99 N.Y.2d 375, 379 (2003) (Wesley, J.)).

Accordingly, for purposes of Section 388(1), New York law "establishes a rebuttable presumption that a vehicle is operated with the owner's consent."  *Murdza*, 59 F. App'x at 417 (citation omitted); *see also Country-Wide Ins. Co. v. Nat'l R.R. Pass. Corp.*, 6 N.Y.3d 172, 176 n.2 (2006) (noting that "[t]he presumption is not contained in the statute but is part of our decisional law" and collecting cases).  While this presumption may be rebutted "by substantial evidence sufficient to show that a vehicle was not operated with the owner's consent," *Murdza*, 99 N.Y.2d at 380 (citation omitted), the New York Court of Appeals has cautioned that even "uncontradicted statements of both the owner and the driver that the driver was operating the vehicle without the owner's permission will not *necessarily* warrant a court in awarding summary judgment for the owner." *Country-Wide Ins.*, 6 N.Y.3d at 177.

Defendant relies on the New York Court of Appeals' decision in *Murdza* to argue that "where the employee-driver violates the employer's clear restrictive policies, the employer can overcome the presumption of permission;" that its Policies imposed such clear restrictions; and that Defendant Vasquez's violation of the Policies on July 24, 2022 rebuts the presumption that he

---

[7] Even though Defendant leased the F-150 from Enterprise FM Trust, no party disputes that Defendant is an "owner" of the F-150 for purposes of Section 388(1).  *See* Dkt. 38-1 at 6 n.1 (stating that Defendant "is an 'owner' for purposes of New York's permissive use statute."); *see also Murdza v. D.L. Peterson Tr.*, 59 F. App'x 416, 417 (2d Cir. 2003) ("New York law deems both lessors and lessees as owners under § 388(1).") (citing N.Y. Veh. & Traf. Law § 128).

was a permissive user of the F-150 at the time of accident.[8]  Dkt. No. 38-1 at 7.  Specifically,

Defendant argues that (i) its Employee Handbook prohibited personal use of the F-150 without

prior written approval, *id.* at 10-11; (ii) its Employee Handbook also prohibited non-employees

from accessing the F-150 without prior written approval, *id.* at 8-10; and (iii) its Alcohol/Drug

Abuse Policy prohibited driving while intoxicated, *id.* at 11-12.  In opposition, Plaintiffs argues

that Defendant has failed to rebut the presumption of permission and because there are genuine

questions of material fact as to whether Defendant Vasquez was a permissive user of the F-150.

Dkt. No. 40 at 5-13.

At the outset, the Court notes that the facts in *Murdza* are significantly different than those

here.  In *Murdza*, an employee's boyfriend had taken the employee's company vehicle for a drive

(without the employee) when he struck a pedestrian.  *Murdza*, 99 N.Y.2d at 377.  The plaintiff

pedestrian sued the employee's boyfriend, the employer company, and two other owners of the

company vehicle.  *Id.* at 378.  The three owners moved for summary judgment, relying on the

company's policy that restricted authorized use of the vehicle to employees and their licensed

spouses.  *Id.* at 377-78 & n.1.  Discovery established that the employee's boyfriend was aware of

this restriction, but nonetheless "impulsively decided . . . to take the van" on the day of the accident.

*Murdza v. Zimmerman*, No. 98-cv-0040, 2000 WL 1887823, at *2 (W.D.N.Y. Dec. 5, 2000).  On

this record, the district court granted summary judgment to the company and the two other owners.

*Id.* at *4.  Following certification from the Second Circuit, the New York Court of Appeals found

that this particular restriction rebutted the Section 388(1) presumption that the employee's

---

[8] In contrast to the Policies, Defendant does not argue that a third document, its Code of Safe Practices, provides a basis for summary judgment with respect to vicarious liability under Section 388(1).  *Compare* Dkt. No. 38-1 at 7-12, *with id.* at 13-14.

boyfriend had the company's permission to operate the vehicle. *Murdza*, 99 N.Y.2d at 381-82; *see also Murdza v. D.L. Peterson Tr.*, 292 F.3d 328 (2d Cir. 2002).

As a threshold matter, the Court notes that there is a factual issue that precludes summary judgment here. *Rodriguez*, 72 F.3d at 1060-61. Defendant has not established that Defendant Vasquez actually received or acknowledged any of the Policies.

With respect to the Employee Handbook, Defendant's corporate representative testified that as part of Defendant's hiring process:

> [W]hen the employee does the onboarding they are given the actual manual, a physical copy of the manual. Then the first page of the manual has a place for signature of receipt. They sign that and then they give that back to us. Then we maintain that record saying they had a physical copy of that signed sheet.

Dkt. No. 38-12 at 18:5-12. No such signed sheet from Defendant Vasquez is in the record before the Court. *See* Dkt. Nos. 38-3, 38-6. Moreover, Defendant's corporate representative also testified that each time revisions were made to the Employee Handbook:

> They are circulated and then they are signed for. They can either be done in an amendment form, or a new book can be issued with an effective date if there are multiple changes. But individual changes to things, employees are notified over their daily e-mail, and then they are supplied a hard copy of it. Then they sign to say they acknowledge and understand the changes that were being made.

Dkt. No. 38-12 at 49:14-23. There is also no such email or signed acknowledgement from Defendant Vasquez in the record before the Court. Yet the Employee Handbook submitted by Defendant indicates that the document was amended at least once in the years after Defendant first hired Defendant Vasquez in 2013. *See, e.g.,* DAVEY_000936 (indicating effective date of Employee Handbook); *see also* Dkt. No. 38-12 at 23:21-23. Defendant's assertion that Defendant Vasquez "would have" received and acknowledged the Employee Handbook, as well as any amendments thereto, suggests that at least two such acknowledgements should exist. Dkt. No. 38-2 at ¶ 2; Dkt. No. 38-12 at 49:14-23; Dkt. No. 38-6. For purposes of summary judgment, the

absence of such documents creates an ambiguity as to whether Defendant Vasquez received and acknowledged the Employee Handbook at any point.[9]  *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.  And as for the Alcohol/Drug Abuse Policy, dated August 17, 2020, Defendant does not even suggest that Defendant Vasquez received or acknowledged this policy.  *See* Dkt. No. 38-1 at 11-12; Dkt. No. 38-2.

A similar factual issue precluded summary judgment in *Baker*, where the Appellate Division "decline[d] to ascribe dispositive significance to a written policy regarding non-work-related usage of its vehicles that [the defendant employer] allegedly distributed to its employees[.]" 68 N.Y.S.3d at 236.  As detailed earlier, the Appellate Division affirmed the trial court's grant of summary judgment to the employer on the question of vicarious liability based on the employee's scope of employment.  *See supra* Section IV.A.  But the Appellate Division reversed the trial court's determination on the question of permissive use, finding that "given the strong statutory presumption of permissive use as well as the conflicting evidence in the record regarding [the defendant employer]'s policies and its adherence thereto, the issue of [the employee]'s permissive use must be resolved at trial."  68 N.Y.S.3d at 236 (citation omitted).

Beyond this factual issue, Defendant has also not established that its Policies are sufficiently "analogous" to the clear restriction in *Murdza* to rebut the statutory presumption of

---

[9] Even assuming Defendant Vasquez "would have" had access to an Employee Handbook, Dkt. No. 38-12 at 18:13-18, Defendant has not established that such access constituted an agreement to any restrictions therein.  *Compare Cruz Garcia v. U.S. Food Serv., Inc.*, No. 04-cv-3691, 2006 WL 2356285, at *2 n.1 (S.D.N.Y. Aug. 11, 2006) (rejecting argument that defendant employee who did not read English well was unaware of employer's policy, written in English, because "when [the employee] was asked at his deposition if he could read and understand a copy of the Associate Acknowledgement Form that he signed, which attested to his receipt and understanding of the policies in the Associate Handbook, he actually read the form and stated that he was able to understand it") (citation omitted).  Here, it does not appear that counsel for any party questioned Defendant Vasquez regarding his understanding and acceptance of the Policies during his deposition.  *See* Dkt. No. 38-7.

permissive use as a matter of law.  Dkt. No. 38-1 at 10.  The Court finds *Williams v. J. Luke Construction Co., LLC*, 99 N.Y.S.3d 460 (App. Div. 2019) instructive, although Defendant's reliance on the decision is misplaced.  In that case, an employee was driving a company vehicle when he had a head-on collision with another vehicle.  *Id.* at 462.  The employee was arrested for driving while intoxicated and vehicular assault, and ultimately sentenced to one to three years of prison in the resulting criminal prosecution.  *Id.* at 463.  In the related civil lawsuit, the plaintiffs obtained a default judgment against the defendant employee on the issue of liability.  *Id.*  The employer and other defendants then moved for summary judgment on the issue of vicarious liability, asserting that the employee "was not a permissive user of the vehicle and not under their control at the time of the accident."  *Id.*  These defendants argued that permission for the employee "to drive the company vehicle was restricted by company policies prohibiting possession or use of drugs or alcohol on company business or property, limiting use of company vehicles to business purposes and prohibiting an employee from reporting to work under the influence of alcohol."  *Id.* at 464.

New York State Supreme Court denied that portion of the motion, and the Appellate Division, Third Department, affirmed.  As relevant here, the Appellate Division found that these policies did "not qualify as an unambiguous agreement restricting permissive use of company vehicles" by employees.  *Id.*; *see also id.* ("Although '[a]n unambiguous and unequivocal agreement restricting authorization to use a vehicle negates an owner's liability for an accident occurring subsequent to a breach of the restriction[, m]ore often than not, a question of fact arises as to whether the presumption has been rebutted.'") (alterations in original) (quoting *Rooney v. Myers,* 517 N.Y.S.2d 627, 628 (App. Div. 1987), *appeal denied*, 70 N.Y.2d 612 (1987)) (additional citation omitted).  The Appellate Division also distinguished between different kinds of employer

policies. *See, e.g., id.* at 464 ("[T]ype restrictions are, of course, to be distinguished from limiting instructions which relate to the manner of operation, such as the speeding or careless pilotage of the car. In this latter situation the owner is still held accountable. However, even where the owner may escape liability, it is unquestionable that, unless the evidence adduced has no merit whatsoever, the question of consent and authority is for the jury[.]") (quoting *Leotta v. Plessinger*, 8 N.Y.2d 454, 461 (1960)) (additional citations omitted). Based on this distinction, the Appellate Division further found that, "[i]n any event, the requirement to drive sober relates more closely to the manner of operation, or how to drive, rather than a restriction on who may operate the vehicle and when and where they may do so." *Id.* (citation omitted).

For reasons similar to those stated by the Appellate Division in *Williams*, the Court finds that Defendant has not established, as a matter of law, that Defendant Vasquez was driving the F-150 without permission at the time of the accident. None of the Policies upon which Defendant relies constitute an "unambiguous and unequivocal agreement restricting authorization to use a vehicle." *Id.* (citation omitted); *compare Ace Am. Ins. Co.*, No. 22-cv-0099, 2025 WL 845100, at *4-7 (S.D.N.Y. Mar. 17, 2025) (granting declaratory judgment to insurer where vehicle owner's employee had agreed to explicit policy that "I will not allow any other individual to drive the vehicle," but then allowed his spouse to drive the vehicle and an accident occurred).

First, as to the Employee Handbook, Defendant states that a portion of the "Use of Company Equipment and Vehicles" policy restricted personal use of the F-150 without prior written approval. Dkt. No. 38-1 at 10-11. But the current record indicates that Defendant provided Defendant Vasquez with, essentially, standing permission to use "his only form of transportation" for personal use, including outside of work hours, without prior approval, written or otherwise. Dkt. No. 38-12 at 22:4-17; *see also supra* Section II.C. It is true that Defendant's corporate

representative characterized some of these activities as requiring some kind of business purpose or "direct utilization," seemingly based on necessity. Dkt. No. 38-12 at 21:13-23:11, 40:14-42:12. The problem for Defendant, at summary judgment, is two-fold. Foremost, "the uncontradicted testimony of a vehicle owner or a vehicle owner's employee that a vehicle was operated without the owner's permission does not, by itself, overcome the statutory presumption of permissive use under Vehicle and Traffic Law § 388(1)." *Rodriguez v. Morales*, 190 N.Y.S.3d 452, 454 (App. Div. 2023) (citations omitted); *see also Dombalic v. Cornelius*, 219 N.Y.S.3d 436, 436-37 (App. Div. 2024) (same) (affirming trial court's denial of summary judgment because defendant vehicle owner had failed to sufficiently rebut the presumption of permissive use, despite submitting an affidavit that the defendant driver had stolen the vehicle on the date of the accident); *Marino v. City of New York*, 943 N.Y.S.2d 564, 566 (App. Div. 2012) ("The question of consent is ordinarily one for the jury.") (citation omitted).

Additionally, the testimony of Defendant's corporate representative is significantly different from the policy language upon which Defendant relies. That language simply states: "The personal use of any Company-owned or provided property, including Company vehicles, is not permitted, except if such limited personal use is pre-approved by an employee's manager in writing." Dkt. No. 38-1 at 10-11; Dkt. No. 38-2 at ¶ 3. The record before the Court appears to contain no exceptions to this general prohibition on personal use absent approval; no exceptions to the prior written approval requirement; and no articulation of the concepts which Defendant's corporate representative utilized to characterize the scope of Defendant's permission. Dkt. No. 38-2 at ¶ 3; DAVEY_000935-37; *see also Murdza*, 99 N.Y.2d at 375 ("[S]ection 388 was designed to 'remove the hardship which the common-law rule visited upon innocent persons by preventing

an 'owner from escaping liability by saying that his car was being used without authority or not in his business.'") (citation omitted).

Given that the policy as written appears to have operated somewhat differently in practice, the Court cannot conclude that the one sentence upon which Defendant relies rebuts the Section 388(1) presumption as a matter of law. *See, e.g., Country-Wide Ins.*, 6 N.Y.3d at 178 ("If the evidence produced to show that no permission has been given has been contradicted or, because of improbability, interest of the witnesses or other weakness, may reasonably be disregarded by the jury, its weight lies with the jury.") (citation omitted); *Baker*, 68 N.Y.S.3d at 236 (finding that given "the conflicting evidence in the record regarding [the defendant employer]'s policies and its adherence thereto, the issue of [the employee]'s permissive use must be resolved at trial") (citation omitted); *compare Britt v. Pharmacologic Pet Servs., Inc.*, 828 N.Y.S.2d 630, 632-33 (App. Div. 2007) (affirming summary judgment for defendant company where employee, in his first month of employment, drove company vehicle into a police car, at midnight, because the employee's "past permitted use included [no] activities other than driving from work to the driver's home and back again").

Defendant also argues that language within the same section of the Employee Handbook prohibits "unapproved passengers" without prior written approval. Dkt. No. 38-1 at 8-10. This argument fails for similar reasons. It again appears that Defendant did not enforce the policy as written, at least during the weekend of the accident. Defendants agree that Defendant Vasquez received only verbal permission to use the F-150 that Sunday. Dkt. No. 38-12 at 31:13-34:4; Dkt. No. 38-7 at 27:12-29:11. Moreover, the relevant policy language is not unambiguous, as it does not specifically address passengers. *Compare* Dkt. No. 38-2 at ¶ 3 ("Company vehicles are provided for the sole and exclusive use of the employees to whom they are entrusted, and

employees are prohibited from allowing anyone else to operate or access those vehicles or equipment, unless such access has been approved in writing by the appropriate manager."), *with Cruz Garcia*, 2006 WL 2356285, at *2 ("[E]mployer[ ] defendant included in its employee handbook a condition forbidding passengers, as follows: 'Only those persons expressly authorized by their Location Manager may be transported in any vehicle owned, rented, leased or utilized by the Company.  Authorization to transport a person more than once must be in writing.  Any person carrying unauthorized passengers will be subject to disciplinary action up to and including termination of employment.'") (citation omitted) (denying summary judgment to defendant employer whose employee had an unauthorized passenger prior to an accident).

Second, as to the Alcohol/Drug Abuse Policy, to the extent the language which Defendant cites prohibits driving while intoxicated, *see* Dkt. No. 38-1 at 11-12, the Court finds that any such "requirement to drive sober relates more closely to the manner of operation, or how to drive, rather than a restriction on who may operate the vehicle and when and where they may do so." *Williams*, 99 N.Y.S.3d at 464 (citation omitted); *see also Arcara v. Moresse*, 258 N.Y. 211, 214 (1932) ("[I]f the limiting instructions relate to the manner of operation, such as the speeding or careless pilotage of the car, though the instructions be disobeyed, nevertheless the use is with 'permission' of the owner.").  Accordingly, this language does not provide a sufficient basis for summary judgment.

In any event, given the numerous other issues discussed above, Defendant Vasquez's apparent lack of express permission to have multiple passengers in the F-150 is not dispositive at this stage.  *See Country-Wide Ins.*, 6 N.Y.3d 172 ("[U]ncontradicted statements of both the owner and the driver that the driver was operating the vehicle without the owner's permission will not *necessarily* warrant a court in awarding summary judgment for the owner."); *accord Carlson*, 30 N.Y.3d at 302-03 ("There is a well-understood meaning of permission in the context of motor

vehicle liability [ ], which turns not on whether the driver had permission to use the vehicle for the particular activity at issue, but on whether the driver had permission to use the vehicle *at all* (i.e. the distinction between a permissive user and a thief).") (citing, *inter alia*, *Murdza*, 99 N.Y.2d at 381) (analyzing "[t]he Vehicle and Traffic Law's understanding of 'permission'" in the context of an insurance dispute).

For all of these reasons, the Policies set forth by Defendant do not constitute, for purposes of summary judgment, "substantial evidence" sufficient to rebut Section 388(1)'s presumption of permissive use. *Murdza*, 99 N.Y.2d at 380. Accordingly, the Court denies this portion of the Motion.

## V.    CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Defendant's motion for summary judgment, Dkt. No. 38, is **GRANTED in part and DENIED in part**, as set forth in Section IV of this Memorandum-Decision and Order; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: April 30, 2025
       Albany, New York

Anne M. Nardacci
U.S. District Judge